## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION FILE** |
| **v.** | ) | |
| | ) | **NO. 1:17-CR-236-AT-AJB** |
| **BRADLEY STACEY GRANT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES MAGISTRATE JUDGE'S ORDER
## AND FINAL REPORT AND RECOMMENDATION

Defendant Bradley Stacey Grant ("Grant" or Defendant) is charged with failing to register under the Sex Offender Registration and Notification Act ("SORNA" or "the Act"), 34 U.S.C. § 20901 *et seq.*,[1] after traveling in interstate commerce, in violation of 18 U.S.C. § 2250(a). [Doc. 1]. He moves to dismiss the indictment on the grounds that his guilty plea to child molestation, entered pursuant to the Georgia First Offender Act, where adjudication of guilt was withheld, did not constitute a "conviction" for purposes of triggering the registration requirements under SORNA. [Doc. 15]. The

---

[1]     Effective September 1, 2017, the SORNA provisions previously located at 42 U.S.C. § 16901 *et seq.* were relocated to 34 U.S.C. § 20901 *et seq.* The language of the statute remains identical. *See id.* The parties submitted their briefs both before and after this change, and understandably at times cited to the former statutory location. All references to SORNA and its provisions in this R&R are to the current location at 34 U.S.C. § 20901 *et seq.*, unless the Court is quoting cases that use the earlier Title 42 citation.

Court disagrees and, therefore, **RECOMMENDS** that Grant's motion to dismiss the indictment, [Doc. 15], be **DENIED**.

## I.    *Introduction*

### A.    *Procedural History*

Grant is charged in a single count indictment that alleges as follows:

Beginning on or about September 26, 2016, in the Northern District of Georgia and elsewhere, the defendant, BRADLEY STACEY GRANT, a person required to register under the Sex Offender Registration and Notification Act, and having traveled in interstate and foreign commerce, did knowingly fail to register and update registration, as required by the Sex Offender Registration and Notification Act, in violation of Title 18, United States Code, Section 2250(a).

[Doc. 1 at 1].  Grant filed a motion to dismiss the indictment, [Doc. 15], to which the Government responded, [Doc. 20], and Grant replied, [Doc. 26].   Thereafter, in response to an order directing the Government to respond to Grant's argument about the non-delegation doctrine, [Doc. 28], the Government filed a sur-response, [Doc. 31], to which Grant filed a sur-reply, [Doc. 39].[2]   With briefing complete, the motion to dismiss is ripe for recommended resolution.

---

[2]        Grant's motion to file the sur-reply out of time, [Doc. 40], is **GRANTED**.

### B.   Legal Standards

Ordinarily, when ruling on a motion to dismiss an indictment, a court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crime.  *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (citing *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)); *see also id.* (explaining that a court may not "dismiss an indictment . . . on a determination of facts that should have been developed at trial") (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)).

However, Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2).  " '(T)he propriety of granting a motion to dismiss an indictment under . . . Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.' " *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977)[3] (quoting *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974) (footnote omitted)).  If a question of law is involved, then

---

[3]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/82)

consideration of the motion is generally proper.  *Id.* (citing *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976)).

In this case, the parties agree that only a question of law is involved and that the Court may rule on the motion before trial.  [Doc. 15 at 2 (citations omitted); Doc. 20 at 1-2].  While the parties' views are persuasive, they are not controlling, so the Court must independently determine whether it has the authority to consider the issues raised before trial.

While the ultimate issue is one of law, resolving the issue pretrial requires the Court to consider facts outside the four corners of the indictment.  Nonetheless, at issue is whether Grant's First Offender sentence triggered his SORNA registration requirement, an issue that Court concludes is an issue strictly of law.  Although the Court's research has not directed it to any SORNA cases directly on point, the Eleventh Circuit has held in somewhat analogous circumstances that determining what qualifies as a triggering conviction for applying a federal statute is a question of law.  *Dixon v. U.S. Attorney Gen.*, 768 F.3d 1339, 1341 (11th Cir. 2014) (holding that whether a conviction qualifies as "an aggravated felony" under the Immigration and Nationality Act is a question of law); *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (finding that defendant's status as convicted felon for purposes of

4

18 U.S.C. § 922(g)(1) prosecution "involved a question of law, rather than a question of fact for the jury"); *United States v. Grinkiewicz*, 873 F.2d 253, 255 (11th Cir. 1989) (finding that defendant's contention in § 922(g)(1) prosecution that prior proceeding did not amount to a conviction "involved a pure legal question, not a factual issue which the jury must decide").   Accordingly, the Court concludes that the motion to dismiss may be decided by way of a pretrial motion, particularly since the facts do not appear to be in material dispute.

## II.    Facts

The facts for purposes of the pending motion are as follows.  On November 12, 2008, Grant pleaded guilty in the Superior Court of Cobb County, in Case No. 08-9-3426-18, to the Georgia crime of child molestation.[4]  In placing him on probation for five years, the Superior Court Judge deferred judgment under the Georgia First Offender Act, O.C.G.A. § 42-8-60 *et seq.*, ordering as follows:

> WHEREAS, said defendant has not previously been convicted of a felony nor availed himself of the provision of the First Offender Act (Ga. Laws 1968, p. 324).

> NOW, THEREFORE, the defendant consenting hereto, it is the judgement of the Court that no judgement of guilt be imposed at this time, but that

---

[4]      A nolle prosequi was entered as to the second charge of statutory rape.  [Doc. 15 at 2; Doc. 20-1 at 4].

5

further proceedings are deferred and defendant is hereby sentenced to confinement for the period of ‑‑‑‑‑‑‑‑ and/or placed on probation for the period of *Five (5) years* from this date provided that said defendant complies with the following general and special conditions herein imposed by the Court as part of his sentence:

PROVIDED, further, that upon violation of the terms of probation, the Court may enter an adjudication of guilt and proceed to sentence defendant to the maximum sentence provided by law.  Upon fulfillment of the terms of probation, or upon release of the defendant by the Court prior to the termination of the period thereof, the defendant shall stand discharged of said offense charged and shall be completely exonerated of guilt of said offense charged.

Let a copy of this Order be forwarded to the Office of the State Probation System of Georgia, and the identification Division of the Federal Bureau of Investigation.

[Doc. 20-1 at 1].  Grant also was ordered to pay a $1,000 fine and comply with "Special Conditions of Probation for Child Abuser/Sex Offender," which included supervision by a probation officer; waiver of confidentiality; treatment and counseling; and various travel, residence, association, and work restrictions.  [*Id.* at 2-3].

Thereafter, on April 2, 2009, Grant acknowledged in writing that he was required to register pursuant to O.C.G.A. § 42-1-12 "as a sex offender in the State of Georgia for a lifetime requirement."  [Doc. 20-2 at 3-6].  His First Offender status was revoked on March 24, 2017, on grounds unrelated to the indictment presently before the Court.  [Doc. 26 at 2-3].

6

### III.   *Arguments of the Parties*

In his opening brief filed in support of his motion, Grant argues that following his November 2008 guilty plea, adjudication of guilt was withheld under the Georgia First Offender Act and, therefore, he had no reporting obligations under SORNA because, as of September 26, 2016 (the date charged in the indictment), he had not been convicted of a sex offense.  [Doc. 15 at 2 (citing 34 U.S.C. § 20913 (prescribing reporting obligations for sex offenders); and quoting 34 U.S.C. § 20911 ("The term 'sex offender' means an individual who was *convicted* of a sex offense.") (emphasis in brief))].  He argues that because one of the elements of a SORNA prosecution is being required to register, he did not incur a registration obligation as of September 26, 2016 (the violation date alleged in the indictment presently before the Court), and, therefore, the indictment should be dismissed.  [*Id.* at 2-3 (citations omitted)].[5]

In response, the Government argues that Grant's First Offender guilty plea qualifies as a conviction under SORNA.  It first contends that Grant did not show how

---

[5]      Grant also argues that the indictment should be dismissed because he did not travel in interstate commerce, another essential element for a valid SORNA conviction.  [Doc. 15 at 3].  Since the question of whether Grant engaged in interstate travel is obviously a question of fact, the Court is powerless to resolve this argument by way of a pretrial motion.  Accordingly, the Court will not address this aspect of Grant's motion to dismiss.

7

his 2008 guilty plea was not a conviction, given that he was given a five-year probated sentence, and argues that one cannot receive a sentence of probation without a conviction. [Doc. 20 at 2 (quoting *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 113-14 (1983) ("It is . . . plain that one cannot be placed on probation if the court does not deem him to be guilty of a crime . . . ."))]. It also points out that the sentencing court never entered an order of discharge; instead, Grant's First Offender status subsequently was revoked. [*Id.* at 2-3].

The Government then argues that the particular nomenclature of Defendant's conviction is irrelevant because the Attorney General's guidelines issued pursuant to SORNA clearly cover convictions under the Georgia First Offender Act, since these guidelines provide, in material part, that "an adult sex offender is 'convicted' for SORNA purposes if the sex offender remains subject to penal consequences based on the conviction, however it is styled." [*Id.* at 3 (quoting Office of the Attorney Gen.; The Nat'l Guidelines for Sex Offender Registration & Notification, 73 Fed. Reg. 38030-01 (hereinafter "SMART Guidelines"[6]))]. The Government contends that withholding adjudication is akin to having a conviction vacated or set

---

[6]     The acronym "SMART Guidelines" comes from the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. *See* 72 Fed. Reg. 30,210 (May 30, 2007).

8

aside, which the SMART Guidelines treat as a conviction, and thus Grant was required to register.  [*Id.* at 3-4].

The Government next argues that its argument is supported by *United States v. Bridges*, 741 F.3d 464 (4th Cir. 2014), where the court held that the defendant's nolo contendere plea in Florida state court to attempted sexual battery upon a minor—for which adjudication of guilt was withheld, the defendant was sentenced to two years probation (later revoked), and he was required to register as a sex offender under Florida law—was still a conviction for purposes of SORNA, thereby affirming the district court's denial of Bridges' motion to dismiss the indictment.  The Government points out that the *Bridges* court noted that Congress had not defined the term "convicted" in SORNA but instead had granted authority to the Attorney General to implement guidelines and regulations to implement the Act, and that the SMART Guidelines provided that " 'an adult sex offender is convicted for SORNA purposes if the sex offender *remains subject to penal consequences based on the conviction*, however it may be styled,' " [Doc. 20 at 5 (quoting *Bridges*, 741 F.3d at 468, and SMART Guidelines) (emphasis in brief)]; and it contends that, as a result, Bridges was required to register as a sex offender, and his failure to do so after traveling in interstate commerce violated 18 U.S.C. § 2250, [*id.* (citing *Bridges*, 741 F.3d at 470)].  The

9

Government further argues that the Eleventh Circuit has held in a non-SORNA case that a nolo contendere plea where adjudication was withheld still qualified as a conviction for purposes of federal law.  [*Id.* at 5-6 (citing *United States v. Maupin*, 520 F.3d 1304, 1305, 1306-07 (11th Cir. 2008) (concluding that nolo plea to Florida offense of possession of child pornography with adjudication withheld constituted a prior conviction for purposes of the enhanced sentences in federal child pornography statutes))].

The Government contends that, as a result, it does not matter that Grant received First Offender treatment upon his guilty plea to child molestation, but rather what matters is that he received a sentence of probation, which is the essence of a conviction. Therefore, it submits, Grant was required to register, and his motion to dismiss should be denied.  [*Id.* at 6].

In reply, Grant points out that under the Georgia First Offender Act, O.C.G.A. § 42-8-60, adjudication is withheld while the defendant completes any sentence imposed by the court; if the defendant successfully completes the sentence, the case is closed without an adjudication of guilt, and, instead, an order of discharge is entered on the record; if the court revokes the First Offender status, an adjudication of guilt is entered upon the record; even without entry of an order of discharge, the

10

defendant is exonerated of guilt and discharged as a matter of law as soon as he completes the terms of his probation, is released by the court from probation, or is released from confinement and parole provided he is not serving a split sentence; and thus, his First Offender disposition was not a conviction as of the date he allegedly violated SORNA.  [Doc. 26 at 1-2 (citations omitted)].  He also points out that the Georgia Court of Appeals has held that a First Offender's guilty plea does not constitute a "conviction" as that term is defined in the Criminal Code of Georgia.

> Rather, under the first offender statute, until an adjudication of guilt is entered, there is no conviction.  The case has, in effect, been suspended during the period of probation until eventually the probation is either revoked or it is discharged; *unless it is revoked, there is no conviction*.

[*Id.* at 2 (quoting *Collins v. State*, 338 Ga. App. 886, 889, 792 S.E.2d 134, 137 (2016) (emphasis in original)].  He argues that since his First Offender status was not revoked until March 24, 2017, but the indictment charges that he violated SORNA for failing to register on or about September 26, 2016, he did not have a registrable conviction at the time charged in the indictment   [*Id.* at 2-3].

Grant next contends that the Government's reliance on *Dickerson* is misplaced because that case was decided under the Gun Control Act of 1968, which the *Dickerson* majority opinion noted was to be given a broad interpretation.  [*Id.* at 3-4 (citing

11

*Dickerson*, 460 U.S. at 112)]. He argues instead that Justice Rehnquist's dissent in that case—concluding that the disposition under the Iowa Deferred Judgment statute involved neither the acceptance of the guilty plea or the formal entry of judgment—should be the basis for the correct decision in this case. [*Id.* at 4 (citing *Dickerson*, 460 U.S. at 124 (Rehnquist, J., dissenting))].

Further, Grant argues that the SMART Guidelines are not controlling because they do not discuss the legal effect of a First Offender disposition where adjudication is withheld. [*Id.* at 4-5]. He also contends that the Government's equating the setting aside or vacating a conviction (as examples of registrable events according to the SMART Guidelines) with a withheld adjudication (as occurred in this case) is flawed, because there is a big difference between vacating or setting aside a conviction that already was entered and not having been convicted at all, as is the case here during the relevant time frame. [*Id.* at 4-5].

Grant next contends that even if the SMART Guidelines characterize Georgia First Offender dispositions as convictions, that determination does not have the force and effect of law. [*Id.* at 5]. He argues that the determination of who is subject to SORNA is a legislative function that Congress did not and could not delegate to the Attorney General. [*Id.* at 5-6 (quoting *United States v. Ambert*, 561 F.3d 1202,

12

1212-13 (11th Cir. 2009). He adds that Congress did not expressly delegate to the Attorney General the authority to define "conviction" and also did not give any guiding direction or principle to the Attorney General for the purposes of promulgating a law on what constitutes a conviction under SORNA, and thus, the SMART Guidelines are at best interpretative as opposed to substantive. [*Id.* at 6-7 (citation omitted)]. As a result, Grant argues, the SMART Guidelines do not have the force of law. [*Id.* at 7 (citing *United States v. Ward*, No. 3:14cr24-MCR, 2014 WL 6388502, at *2, 5-6 (N.D. Fla. Nov. 14, 2014) (holding that defendant's failure to provide information on temporary lodging could not be basis for criminal liability under SORNA's requirement to provide name, residence, employment, and student status, despite SMART Guidelines requirement that sex offender provide information about any place the offender stays for seven or more days); *United States v. Belaire*, 480 Fed. Appx. 284, 287-88 (5th Cir. June 25, 2014) (vacating SORNA conviction where jury instructed on seven-day stay provision, holding that "[t]his requirement does not create an additional basis for criminal liability under § 2250"))].

Grant also argues that SORNA did not expressly delegate to the Attorney General the authority to define "conviction," and that the Government has not cited to any cases that hold that the Attorney General's interpretation of "conviction" is

13

controlling as a matter of law.  [*Id.* at 8].  He contends that neither *Bridges* nor *Maupin* compels such a result.  [*Id.*].  First, he claims, *Bridges*' result was based not only upon the SMART Guidelines but also upon the Florida sex-offender registration requirement's definition of "conviction," *Dickerson*, and an earlier Fourth Circuit opinion, *United States v. Wright*,   238 F.3d 418 (Table), 2000 WL 1846340 (4th Cir. Dec. 18, 2000).  [Doc. 26 at 9].  He further contends that the SMART Guidelines do not have the force and effect of law; *Dickerson* is inapplicable for the earlier stated reasons; the Florida sex offender statute definition applies only to Florida dispositions; Florida law applies a broader definition of "conviction" that is at odds with the Georgia First Offender statute; and in *Wright*, the court placed emphasis on Florida law's consideration of the disposition as a final judgment, whereas here, the Georgia courts would conclude that Grant's First Offender plea was not a conviction.  [Doc. 26 at 9-10].  He also contends that *Maupin*, based as it is on interpretation of the effect of a Florida nolo contendere plea, is not instructive.  [*Id.* at 10].

Instead, Grant relies on *United States v. Alvarado*, 458 F. Supp. 2d 1266, 1269-70 (D.N.M. 2006), which held that conditional discharge with probation was not a conviction for the purposes of a sentencing enhancement under the Controlled

14

Substances Act ("CSA"), reasoning that a contrary result would undermine full faith and credit and comity, implicate due process where well-established state law deemed a proceeding not a conviction, undermine the CSA's and SORNA's goals of partnership between state, local, and federal governments, and undermine the principle that vague sentencing provisions may pose constitutional questions and must be resolved in favor of lenity.  [Doc. 26 at 11-12].  Grant concludes that he was not convicted of a sex offense as of the time he is alleged to have traveled in interstate travel and failed to register because:

> [n]o judgment or adjudication had been entered against him. Congress has not said or shown any intent that such a disposition should be treated as a conviction for purposes of SORNA, thereby subjecting those persons to registration requirements and criminal sanction. To nevertheless construe the first offender disposition as a conviction despite the manifest intentions of the State of Georgia runs afoul of principles of full faith and credit, comity, and due process; it also runs contrary to the spirit of federal-state partnership and cooperation that is manifest in the Congressional expressions regarding the purpose of SORNA.  At a minimum, there is ambiguity in whether the SORNA intends to treat first offender dispositions with adjudication withheld as convictions.  Under the rule of lenity, that ambiguity should be resolved in [his] favor. . . .

[*Id.* at 12-13].

Following the first round of briefing, the Court ordered the Government to address the non-delegation doctrine in relation to the SMART Guidelines' definition

of "conviction." [Doc. 28 at 2-3]. In its brief, [Doc. 31], the Government argues that SORNA is not an impermissible delegation of congressional power. It argues that 34 U.S.C. § 20911(1) provides that "[t]he term 'sex offender' means an individual who was convicted of a sex offense," and that 34 U.S.C. § 20912(b) provides that "[t]he Attorney General shall issue guidelines and regulations to interpret and implement this subchapter." 34 U.S.C. § 20912(b). [Doc. 31 at 3]. The Government submits that the use of the word "shall" was Congress's directive " 'to the Attorney General specifically to make the determination,' " [*id.* at 4 (quoting *United States v. Madera*, 528 F.3d 852, 857 (11th Cir. 2008), and citing *United States v. Quirante*, 486 F.3d 1273, 1275 (11th Cir. 2007))], and thus the Attorney General's guidelines to interpret and implement SORNA do not run afoul of the non-delegation doctrine. [*Id.*].

The Government further contends that the non-delegation doctrine is rarely used to invalidate a statutory scheme, and argues that the test to against which the statutory scheme must be judged is whether Congress has provided an "intelligible principle" to guide the recipient's exercise of the delegated power, [*id.* (quoting *Mistretta v. United States*, 448 U.S. 361, 372 (1989))], a test that is met where " 'Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of the delegated authority.' " [*Id.* at 4-5 (quoting *Mistretta*, 448 U.S. at 372-73)]. It

16

contends that all three prerequisites are present in this case. First, Congress articulated a clear policy since the declared purpose of SORNA is to " 'protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders.' " [*Id.* at 5 (quoting 34 U.S.C. § 20901)]. The Government argues that the Supreme Court has found that such broad policy statements constitute valid intelligible principles for delegation purposes. [*Id.* (citing *Yakus v. United States*, 321 U.S. 414, 420 (1944); *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190, 194 (1943); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475-76 (2001))]. Second, the Government points to statutory authority delegating power to the Attorney General to interpret and implement SORNA. [*Id.* (citing 34 U.S.C. § 20912)]. Third, the Government argues that the Attorney General's power under SORNA is highly circumscribed because " 'Congress made virtually every legislative determination in enacting SORNA, which has the effect of constricting the Attorney General's discretion to a narrow and defined category.' " [*Id.* at 6 (quoting *Ambert*, 561 F.3d at 1214, and noting that *Ambert* concluded that Congress defined which crimes required registration, where the offender must register, the time limits for compliance, the information required to complete registration, and the penalties for violating the registration requirements)].

17

The Government contends, therefore, that the Attorney General was properly delegated the authority to promulgate regulations and guidelines to implement and interpret SORNA, including the SMART Guidelines, and that the Guidelines constitute substantive rulemaking and thus have the force and effect of law.  [*Id.* at 6 (citing *United States v. Lott*, 750 F.3d 214, 217-19 (2d Cir. 2014); *United States v. Dean*, 604 F.3d 1275, 1278-81 (11th Cir. 2010))].  The Government submits that, although *Lott* and *Dean* dealt with the Attorney General's rulemaking authority as to SORNA's retroactive application, these cases support its argument that the Attorney General was properly authorized to define "conviction" in the SMART Guidelines, and that this definition—"an adult sex offender is 'convicted' for SORNA purposes if the sex offender remains subject to penal consequences based on the conviction, however it may be styled"—has the force and effect of law.  [*Id.* at 6-7 (quoting *Bridges*, 741 F.3d at 468, and *United States v. Stevenson*, 676 F.3d 557, 565 (6th Cir. 2012))].

Finally, the Government argues that Grant's reliance on *Ward* is misplaced because that case did not deal with the non-delegation doctrine and instead concerned a provision that the *Ward* court held was directed at the states and not at sex offenders.  [*Id.* at 7 (citations omitted)].  In fact, the Government argues that *Ward*

18

supports its position, in that the opinion held that the SMART Guidelines had the force and effect of law.  [*Id.* (citing *Ward*, 2014 WL 6388502 at *2 n.8)].

In his sur-reply, Grant argues that the Supreme Court just granted certiorari in *Gundy v. United States*, 138 S. Ct. 1260 (Mar. 5, 2018) (cert. granted as to Question 4[7]), and that the issue in the present case—the authority of the Attorney General to define the meaning of the term "convicted" for purposes of who qualifies as a sex offender—is "a question of the same order as that now before the Supreme Court in *Gundy*."  [Doc. 39 at 2].  Further, Grant argues that although Congress directed the Attorney General to issue guidelines for the implementation of SORNA's provisions, it did not direct the Attorney General to issue a rule with the force and effect of law defining what the term "conviction" means.  [*Id.* at 3].  He further argues that the Government's reliance upon *Madera* is misplaced because that case dealt only with Congress's delegation of authority to the Attorney General concerning SORNA's retroactivity.   [*Id.* at 3-4 (citing *Madera*, 528 F.3d at 857-58)].

_____

[7]      Question 4 in *Gundy* is "Whether SORNA's delegation of authority to the Attorney General to issue regulations under 42 U.S.C. § 16913(d) violates the nondelegation doctrine."  *Gundy v. United States*, No. 17-6086, 2017 WL 8132120, at *I (petition, Sept. 20, 2017).

AO 72A
(Rev.8/82)

He next argues that even if the SMART Guidelines provide the controlling definition of the term "convicted," the delegation of authority violates the non-delegation doctrine because Congress's stated purpose in enacting SORNA is different from the necessary delineation of a general policy or intelligible principle. [*Id.* at 5-6]. He contends that Congress provided no boundaries whatsoever for what qualifies as a conviction, and therefore, this unrestrained freedom allowed the Attorney General to make SORNA applicable to persons not convicted under applicable state laws. [*Id.* at 6]. Grant also counters that the cases relied upon by the Government all dealt with situations where Congress gave greater policy direction to those exercising the delegated authority than it did here. [*Id.* at 6-7 (citing *Yakus v. United States*, 321 U.S. 414, 419 (1944) (approving wartime conferral of agency power to fix the prices of commodities at a level that " 'will be generally fair and equitable and will effectuate the [in some respects conflicting] purposes of th[e] Act' "); *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 193 n.1 (1943) (dealing with "chain broadcasting" and the FCC's power to regulate airwaves); and *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 474-75 (2001) (concerning EPA's authority to set ambient air quality standards)]. In the present case, he argues, any delegation of authority granted to the Attorney General to determine who has suffered a prior conviction is not constrained

20

or channeled by delineation of policy, making this case analogous to the two times that

the Supreme Court struck down delegations of authority as running afoul of the non-

delegation doctrine.  [*Id.* at 8-9 (citing *Panama Refining Co. v. Ryan*, 293 U.S. 388,

405, 430 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 541-42

(1935))].

      Grant also contends that none of the cases relied upon by the Government are on

point, stating that neither *Bridges*, *Stevenson*, nor *Dean*, 604 F.3d 1275, dealt with the

non-delegation doctrine; that *Lott* did not concern delegation of the term "convicted"

but rather the Interim Rules and the SMART Guidelines generally; and that *Ambert*

dealt with the Attorney General's guidelines on retroactivity.  [*Id.* at 9-10].

      In closing, in addition to noting the pending *Gundy* case, Grant points out that

in his dissent in *Reynolds v. United States*, 565 U.S. 432, 448, 450 (2012), Justice

Scalia wrote that "it is not entirely clear to me that Congress can constitutionally leave

it to the Attorney General to decide—with no statutory standard whatever governing

his discretion—whether a criminal statute will or will not apply to certain individuals.

That seems to me sailing close to the wind with regard to the principle that legislative

powers are nondelegable . . . ."  Defendant then argues that determination of who

should be subject to the requirements, strictures and potential consequences of SORNA

is inherently a function reserved to the legislative branch of government, and thus allowing the Attorney general to define "convicted" within the context of SORNA violates the non-delegation doctrine.  [Doc. 39 at 11].

## III.   Discussion

### A.   Legal Framework

Title 18 U.S.C. § 2250 provides in relevant part that

> Whoever--
>> (1) is required to register under the Sex Offender Registration and Notification Act;
>> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).  SORNA, in turn, requires that a sex offender register, and keep the registration current, in each jurisdiction where the offender resides, is employed, or is a student.  34 U.S.C. § 20913(a).  SORNA defines "sex offender" as "an

individual who was convicted of a sex offense." *Id.* § 20911(1).  SORNA also requires the States (among other jurisdictions) to maintain "a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter" and directs the Attorney General to "issue guidelines and regulations to interpret and implement this subchapter." *Id.* § 20912(b).  More specifically, the Act gives the Attorney General the authority, among other things, to (1) specify the applicability of the requirements of SORNA to sex offenders convicted before the enactment of the Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with the registration requirements of § 29013(b), 34 U.S.C. § 20913(d); (2) set out the kind of information the sex offender must provide for inclusion in the registry, *id.* § 20914(a)(7), (8), (c); (3) require sex offenders to provide any internet identifiers to applicable sex-offender registries, and to establish and maintain a system so that social-networking websites can compare the internet identifiers of sex offenders and the users of the websites, *id.* §§ 20916, 20917; (4) establish rules for notification of sex offenders who cannot be notified of the obligation to register and the registration requirements either before their release from custody or immediately after sentencing if not in custody, *id.* § 20919(b); (5) maintain a national database at the Federal Bureau

23

of Investigation for each sex offender and any other person required to register in a jurisdiction's sex-offender registry (the database to be known as the National Sex Offender Registry), *id*. § 20921; and (6) grant extensions of up to one year to allow states and other jurisdictions to comply with the Act.  *Id.* § 20926.

SORNA also includes a "Declaration of Purpose":

> In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, Congress in this chapter establishes a comprehensive national system for the registration of those offenders[.]

34 U.S.C. § 20901.  The balance of the Declaration lists the names of seventeen victims.  *Id.*

Then, effective July 2, 2008, the Department of Justice published the SMART Guidelines (also known as the "Final Guidelines") to implement SORNA, which contained the provision at issue in this case:

A. Convictions Generally

A "sex offender" as defined in SORNA § 111(1) is a person who was "convicted" of a sex offense.  Hence, whether an individual has a sex offense "conviction" determines whether he or she is within the minimum categories for which the SORNA standards require registration.

Because the SORNA registration requirements are predicated on convictions, registration (or continued registration) is normally not required under the SORNA standards if the predicate conviction is

24

reversed, vacated, or set aside, or if the person is pardoned for the offense on the ground of innocence.  This does not mean, however, that nominal changes or terminological variations that do not relieve a conviction of substantive effect negate the SORNA requirements.  For example, the need to require registration would not be avoided by a jurisdiction's having a procedure under which the convictions of sex offenders in certain categories (e.g., young adult sex offenders who satisfy certain criteria) are referred to as something other than "convictions," or under which the convictions of such sex offenders may nominally be "vacated" or "set aside," but the sex offender is nevertheless required to serve what amounts to a criminal sentence for the offense.  Rather, an adult sex offender is "convicted" for SORNA purposes if the sex offender remains subject to penal consequences based on the conviction, however it may be styled.  Likewise, the sealing of a criminal record or other action that limits the publicity or availability of a conviction, but does not deprive it of continuing legal validity, does not change its status as a "conviction" for purposes of SORNA.

Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, § IV.A., 73 Fed. Reg. 38030,  38050 (July 2, 2008).

### B.     Analysis

The issues presented by Grant's motion appear to be of first impression in the Eleventh Circuit.  For the following reasons, Grant's motion is due to be denied.  First, under federal law, his First Offender guilty plea to child molestation means he was "convicted of a sex offense" for purposes of registration under SORNA.  Second, to the extent that the non-delegation doctrine is implicated in this case, the Court concludes that the delegation to the Attorney General to "issue guidelines and regulations to

interpret and implement" SORNA, 34 U.S.C. § 20912(b), and the SMART Guidelines'

resulting definition of "conviction," do not run afoul of that doctrine.  Third, to the

extent they are applicable, the SMART Guidelines have the force and effect of law.

### 1.     *Grant's First Offender Plea to Child Molestation is a "Conviction" under SORNA*

Contrary to Grant's contentions, the Court concludes that Defendant's First

Offender guilty plea to child molestation constitutes a "conviction" for purposes of

SORNA.  The Court rejects Grant's argument that because a First Offender sentence

is not a conviction under Georgia law, he has not been convicted for purposes of

SORNA.  The issue before the Court is one of federal, not state, law.  *Dickerson*,

460 U.S. at 111-12 ("Whether one has been 'convicted' within the language of the gun

control statutes is necessarily, . . . , a question of federal, not state, law, despite the fact

that the predicate offense and its punishment are defined by the law of the State . . . .

This makes for desirable national uniformity unaffected by varying state laws,

procedures and definitions of 'conviction.' "); *United States v. Lanzon*, 639 F.3d 1293,

1299 (11th Cir. 2011) ("Because [18 U.S.C.] § 2422(b) is a federal statute, the

interpretation of what 'attempting' means under the statute is a matter of federal law.");

*Maupin*, 520 F.3d 1304, 1306 ("federal law generally determines whether an offense

26

constitutes a prior conviction"); *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 854 (11th Cir. 2009) ("Because the Disclosure Act is a federal statute its interpretation is a matter of federal law, so we will use principles of statutory interpretation from federal decisions to construe the term 'obligating.' "); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 n.9 (11th Cir. 2005) ("The meaning of this statutory language in the FAA involves interpretation of a federal statute and thus is a question of federal law.  We thus reject the plaintiffs' argument that Georgia law governs this issue."); *United States v. Mejias*, 47 F.3d 401, 403 (11th Cir. 1995) ("[t]he meaning of the word 'conviction' in a federal statute is a question of federal law unless Congress provides otherwise") (citing *Dickerson*, 460 U.S. at 119); *see also Bridges*, 741 F.3d at 468 (recognizing that courts "begin with the undisputed premise that federal law, rather than state law, controls the question of what constitutes a conviction under SORNA") (citation omitted); *Braddock v. Orlando Reg'l Health Care Sys., Inc.*, 881 F. Supp. 580, 583 (M.D. Fla. 1995) (noting that "[f]ederal courts are the final arbiters of federal law").  *Cf. Dickerson*, 460 U.S. at 119 (stating that " 'in the absence of a plain indication to the contrary, . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law' ") (citations omitted). Thus, the Court does not look to Georgia law to determine whether Grant's First

27

Offender guilty plea to child molestation is a conviction for purposes of SORNA registration; rather, federal law controls.

Next, although *Dickerson* is not on all fours with the present case because it involves a different statutory scheme, its reasoning inexorably leads to the conclusion that Grant's Georgia First Offender guilty plea is a conviction requiring him to register under SORNA.  In *Dickerson*, Kennison, a corporate officer of a federal firearms dealer, was charged in Iowa with kidnaping his estranged wife.  He pleaded guilty to the Iowa offense of carrying a concealed weapon (which crime carried a maximum sentence of up to five years in prison, a $1,000 fine, or both), and the kidnaping charge was dismissed.  In sentencing him, the Iowa court noted that he had entered a guilty plea and had consented to deferral of sentence in the case, and, because he had stable employment and there were " 'unusual circumstances,' " the court " 'deferred' " entry of a formal judgment and placed him on probation.  *Id.* at 106-08.  Kennison returned to his South Carolina residence where he successfully completed his probation, and upon completion, he was discharged pursuant to Iowa law, and his deferred judgment was expunged.  Later that same year, the corporation of which he was the "responsible person" for purposes of the federal-firearms licensee laws applied to the Bureau of Alcohol, Tobacco and Firearms ("ATF") for a federal firearms dealer's license ("FFL"),

AO 72A
(Rev.8/82)

but the application was revoked due to the ATF's determination, *inter alia*, that Kennison's Iowa case was a conviction and he thus was an ineligible person to be licensed under the version of 18 U.S.C. § 920(a)(20) then in effect (as read in conjunction with 18 U.S.C. § 922(g)(1), part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 (hereinafter "the 1968 Act" or "the Gun Control Act")).[8] The corporation sought review of the ATF's decision; the district court agreed with the ATF, but the circuit court of appeals reversed, holding that although Kennison had been "convicted," the conviction could not be used as a predicate for a Gun Control Act license revocation because Kennison's conviction had been expunged pursuant to the Iowa deferred-judgment procedure. *Id.* at 109-10 (citations omitted).

On certiorari, the Supreme Court reversed. The Court first held that to determine the scope of a statute, courts must first look at its language, and if the language is unambiguous, that language is ordinarily regarded as conclusive unless there is a clear

---

[8]     Title 18 U.S.C. § 922(g)(1) makes it unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. In the Firearms Owners' Protection Act (FOPA), 100 Stat. 449, Congress amended 18 U.S.C. § 921(a)(20) in response to *Dickerson*'s holding that, for purposes of federal firearms disabilities, state law did not determine the present impact of a prior conviction. *See Logan v. United States*, 552 U.S. 23, 27-28 (2007).

indication of legislative intent to the contrary. *Id.* at 110 (citations omitted). The Court concluded that the statute that prohibited "any person . . . who has been convicted" from receiving an FFL was unambiguous, and thus Kennison's company was entitled to an FFL only if Kennison in fact was not convicted or the expunction acted to nullify that conviction. *Id.* at 110-11.

As to whether Kennison's Iowa deferred judgment was a conviction, the Court held that the "[t]he salient fact is Kennison's plea of guilty to a state charge punishable by more than a year's imprisonment." *Id.* at 111. While recognizing that typically a conviction results from a court's or jury's finding of guilt, in Kennison's case there was present a charge of a crime of a "disqualifying type," a guilty plea, and a sentence of probation. *Id.* The Court noted that it previously had broadly interpreted the word "convicted" in Title VII of the 1968 Act–holding that a prior conviction still was disabling even where it was subject to collateral attack on constitutional grounds, *id.* (discussing *Lewis v. United States*, 445 U.S. 55, 60 (1980)[9])–where it had characterized the language of the statute as " 'sweeping,' " *id.* (quoting *Lewis*,

_____

[9]      In *Lewis*, the defendant's predicate conviction underlying his felon-in-possession conviction could have been, but at the time of the felon-in-possession charge had not been, challenged on the grounds that it was uncounseled and thus imposed in violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963). *Lewis*, 445 U.S. at 56-57.

AO 72A
(Rev.8/82)

445 U.S. at 60), and the Court saw very little difference between Title IV (at issue in *Dickerson*) and Title VII of the 1968 Act (at issue in *Lewis*). *Id.* (quoting *Lewis*, 445 U.S. at 64). It also noted that in *Lewis*, the Court recognized that, in the 1968 Act, Congress "sought to rule broadly–to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possessing a firearm without becoming a threat to society.' " *Id.* at 112 (quoting *Lewis*, 445 U.S. at 63, and *Scarborough v. United States*, 431 U.S. 563, 572 (1977)) (quotation marks altered).

With this backdrop, the *Dickerson* court concluded that Kennison's deferred judgment was a conviction within the meaning of the 1968 Act. It noted that, following negotiations, Kennison voluntarily entered a guilty plea, a proceeding that the Supreme Court has noted on other occasions differs from a mere admission or extrajudicial confession, but like a jury verdict, is conclusive, with the court having nothing more to do except enter judgment and sentence. *Id.* at 112-13 (citations and footnotes omitted). In addition, the Court found significant that the Iowa judge placed Kennison on probation:

> To be sure, there was no written adjudication of guilt and there was no formal pronouncement of a sentence of imprisonment for a specified term. But that was due to special provisions of Iowa statutory law and procedure. It was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities

31

> on one convicted of "a crime *punishable* by imprisonment for a term exceeding one year." § 922(g) (emphasis supplied). It is also plain that one cannot be placed on probation if the court does not deem him to be guilty of a crime[]—in this case a crime that Congress considered demonstrative of unreliability with firearms. Thus, for purposes of the federal gun control laws, we equate a plea of guilty and its notation by the state court, followed by a sentence of probation, with being "convicted" within the language of §§ 922(g) and (h). *See United States v. Woods*, 696 F.2d 566, 570 (CA8 1982) ("once guilt has been established whether by plea or by verdict and nothing remains to be done except pass sentence, the defendant has been convicted within the inten[d]ment of Congress").

*Dickerson*, 460 U.S. at 113-14 (alterations in *Dickerson*).

The court also concluded that the Iowa expunction, unlike a qualifying pardon or the vacating or reversal of a conviction on direct appeal, did not alleviate the firearm-license disability:

> [E]xpunction does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty. Expunction in Iowa means no more than that the State has provided a means for the trial court not to accord a conviction certain continuing effects under state law. Clearly, firearms disabilities may be attached constitutionally to an expunged conviction, *see Lewis v. United States*, 445 U.S.[] at 65-68[ ], and an exception for such a conviction, unlike one reversed or vacated due to trial error, is far from obvious. In *Lewis* we held that the exception for convictions reversed or vacated on direct appeal did not make ambiguous the statute's clear application to convictions arguably vulnerable to collateral attack. We perceive no more ambiguity in the statute here than we did in *Lewis*.

AO 72A
(Rev.8/82)

*Id.* at 115.[10]

Finally, the *Dickerson* court noted that its task was to interpret the words of a statute in light of the purposes Congress sought to serve. *Id.* at 118. In that case, the court found that Congress determined that firearms should be kept away from persons convicted of serious crimes who might be expected to misuse them and that since firearms and ammunition are obtained through FFLs, the previous-conviction ban logically covers those persons as well. *Id.* at 119. Since "Congress used unambiguous language in attaching gun control disabilities to any person 'who has been convicted' of a qualifying offense," the court gave "full effect to that language." *Id.* at 122.[11]

Turning to the present case, the undersigned concludes that, based on *Dickerson*, Grant's First Offender guilty plea to child molestation is a conviction of a sex offense for purposes of SORNA. Like Kennison in *Dickerson*, Grant entered a negotiated

---

[10]     The *Dickerson* court also provided other reasons why Kennison's expunction did not relieve his FFL disability. *Dickerson*, 445 U.S. at 115-118. Those reasons do not impact this Court's reasoning because Grant's case is distinguishable from Kennison's, since at the time charged in the current indictment, Grant had not completed, or been discharged from, his First Offender sentence.

[11]     The Court rejects Grant's argument that the Court should rely on Justice Rehnquist's dissent in *Dickerson*. However, a dissenting Supreme Court opinion is not binding precedent. *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996); *United States v. Goodrich*, 871 F.2d 1011, 1013 (11th Cir. 1989).

33

guilty plea, in this case, to child molestation, and the statutory rape charge was dismissed. The Georgia crime of child molestation is a "sex offense" under SORNA, because it involved a sexual act with a minor. 34 U.S.C. § 20911(5)(A)(I), (ii).[12] Like Kennison, Grant was placed on probation for five years and required to pay a fine and other surcharges. [Doc. 20-1 at 1]. Grant also was subject to "Special Conditions of Probation for Child Abuser/Sex Offender," a violation which if proven by a preponderance of the evidence would result in revocation of his probation and his imprisonment. [*Id.* at 2]. While a number of the special conditions are similar to those imposed in this Court upon persons charged with sexual crimes and released on pretrial supervision, some of the special conditions imposed on Grant are of the type only imposed upon persons on post-conviction supervision: waiving confidentiality to allow "the disclosure of information about *this conviction*" (emphasis supplied) to the Department of Corrections, Board of Pardons and Paroles, Department of Family and Children Services, treatment providers, and the court and its staff; being appropriately clothed when in public; undergoing evaluation and all necessary treatment at his own

---

[12]     The Court has not been advised, and the record does not reflect, whether the exception under 34 U.S.C. § 20911(5)(C) (excluding from the definition of sex offense an offense involving a victim who was at least 13 years old and the offender was not more than 4 years older than the victim) applies in this case.

expense for, among other things, sexual deviancy, and continuing in treatment and counseling for the duration of probation; not lingering or stopping at any elementary, middle, or high schools nor at any school bus stops, amusement parks, playgrounds, or arcades; submitting to an HIV test; and having a blood sample drawn for DNA analysis pursuant to O.C.G.A. § 35-3-160 (previously O.C.G.A. § 24-4-60).[13] [Doc. 20-1 at 2-3]. Therefore, just like Kennison in *Dickerson*, Grant's guilty plea to child molestation and his placement on probation supervision establish that despite the withholding or deferral of judgment under Georgia's First Offender Act, Grant was convicted of a sex offense, thus triggering his duty to register consistent with SORNA.

Next, like the Gun Control Act of 1968, SORNA also has a broad purpose and scope, that is, to keep track of sex offenders. *Carr v. United States*, 560 U.S. 438, 456 (2010); *see also United States v. Kebodeaux*, 570 U.S. 387, 399 (2013) (noting that SORNA's general changes from earlier Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act were designed to make more uniform what

---

[13]   O.C.G.A. § 35-3-160(b) requires any person convicted of a felony offense "shall at the time of entering the detention facility or being placed on probation have a sample of his or her blood, an oral swab, or a sample obtained from a noninvasive procedure taken for DNA (deoxyribonucleic acid) analysis to determine identification characteristics specific to the person."

had remained "a patchwork of federal and 50 individual state registration systems," with "loopholes and deficiencies" that had resulted in an estimated 100,000 sex offenders becoming "missing" or "lost") (quoting *Reynolds v. United States*, 565 U.S. 432, 435 (2012), and SORNA House and Senate Reports); *United States v. Dodge*, 597 F.3d 1347, 1352 (11th Cir. 2010) (en banc); *Ambert*, 561 F.3d at 1205 (holding that Congress enacted SORNA " 'to protect the public from sex offenders and offenders against children' by establishing 'a comprehensive national system for the registration of those offenders.' ") (quoting 34 U.S.C. § 20901 and noting that "[g]iven the seriousness of the problem it was designed to address, SORNA extends to "all sex offenders" and applies retroactively to qualifying offenses committed before 2006). The Eleventh Circuit in *Dodge* took note of SORNA's broad scope:

> In passing SORNA, Congress left courts with broad discretion to determine what conduct is "by its nature" a sex offense. Indeed, Congress's stated purpose was to capture a wider range of conduct in its definition of a "sex offense," and *specifically all offenses—not just convictions—of child predators*. The language of SORNA discloses that in some situations a sexual act might not even be the prerequisite to a registerable "sex offense." *The key is conduct that contains a "sexual component" toward a minor*. Our review of the language of SORNA confirms our conclusion that Congress cast a wide net to ensnare as many offenses against children as possible.

*Id.* at 1355 (emphasis added).   Another court has described Congress's purpose in

enacting SORNA as follows:

> Indeed, it was Congress's desire to create a comprehensive and uniform
> registration system among the states to ensure offenders could not evade
> requirements by simply moving from one state to another.  It would be
> illogical for members of Congress to express concern that thousands of
> sex offenders who were required to register under state law were evading
> those registration requirements and then exempt those same offenders
> from SORNA.

*United States v. Hinen*, 487 F. Supp. 2d 747, 753 (W.D. Va. 2007).  The *Hinen* court

also quoted the legislative history of the Act, reflecting Congress's broad intent to

cover as many sex offenders as possible:

> By requiring national registration obligations, regular updates, frequent
> in-person verification, and providing tough and targeted criminal
> penalties, we intend to make one thing clear to sex offenders across the
> country-you better register, and you better keep the information current,
> or you are going to jail.

152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of

Rep. Sensenbrenner), quoted in *Hinen*, 487 F. Supp. 2d at 753; *see also Carr*,

560 U.S. at 456 ("[W]e have little reason to doubt that Congress intended § 2250 to do

exactly what it says: to subject to federal prosecution sex offenders who elude

SORNA's registration requirements by traveling in interstate commerce.");

37

34 U.S.C. § 20901 (establishing a comprehensive national system for the registration of sex offenders); *id.* § 20911(5), (7) (twice referring to the "expansion" of definitions).

Like *Dickerson* in relation to the Gun Control Act of 1968, the Court sees no evidence that Congress did not intend to give SORNA the broadest sweep possible in order to fulfill its goal of a uniform and comprehensive scheme to register sex offenders. *Carr*, 560 U.S. at 441-42 ("Since 1994, federal law has required States, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant systems for sex-offender registration and community notification.  In an effort to make these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted the Sex Offender Registration and Notification Act (SORNA or Act) as part of the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, Tit. I, 120 Stat. 590."); *Reynolds*, 565 U.S. at 435 (noting SORNA "seeks to make those [state sex offender registration] systems more uniform and effective . . . by setting forth comprehensive registration-system standards; by making federal funding contingent on States' bringing their systems into compliance with those standards; by requiring both state and federal sex offenders to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable

38

to those who violate the Act's registration requirements").[14]   This conclusion is corroborated by the narrowing language the Congress employed in excluding from the definition of sex offense some foreign convictions (34 U.S.C. § 20911(5)(B)), certain offenses involving consensual sexual conduct (*id.* § 20911(5)(C)), and not all juvenile adjudications (*id.* § 20911(8)).

Thus, from this broad purpose underlying SORNA and the unambiguous language used by Congress—specifically, that a "sex offender" is "an individual who was convicted of a sex offense"—34 U.S.C. § 20911(1)), the Court concludes that despite adjudication being withheld, under federal law, Grant's First Offender guilty plea is a conviction of a sex offense that required him to register under SORNA.

The Court rejects Grant's argument that *Alvarado*'s holding that withheld adjudications are not convictions should guide the Court.   In *Alvarado*, the court held that a sentence imposed under New Mexico's conditional-discharge procedure cannot be used to enhance a sentence under 21 U.S.C. § 851.   458 F. Supp. 2d at 1269. However, the Court is not bound by *Alvarado*.   *See Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) ("[T]he district court

---

[14]     The Court rejects Grant's argument that Justice Scalia's dissent in *Reynolds* is more persuasive.   *See supra* n.11.

cannot be said to be bound by a decision of one of its brother or sister judges."); *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court . . . ."). More importantly, however, *Alvarado* itself points out that in *Mejias*, 47 F.3d at 404, the Eleventh Circuit held that a Florida nolo contendere plea with withheld adjudication constituted a conviction for a § 851 enhancement. Further, in *United States v. Tavira*, 348 Fed. Appx. 464, 465 (11th Cir. Oct. 5, 2009), the Eleventh Circuit, relying upon *Dickerson* and *United States v. Acosta*, 287 F.3d 1034, 1036-37 (11th Cir. 2002), held that a Georgia First Offender adjudication could be used to enhance a sentence under § 851. Thus, binding precedent demonstrates that a Georgia First Offender disposition is a conviction under federal law.

For these reasons, the Court rejects Grant's argument that his Georgia First Offender guilty plea to child molestation did not constitute a conviction for purposes of being required to register as a sex offender pursuant to SORNA. As a result, the Court **RECOMMENDS** that his motion to dismiss, [Doc. 15], be **DENIED**.

### 2.     *The SMART Guidelines Do Not Violate the Non-Delegation Doctrine*

The Court's conclusion that Grant's First Offender disposition is a conviction for purposes of SORNA registration requirements moots the need for the Court to discuss whether the SMART Guidelines' definition of "conviction" is in violation of the non-delegation doctrine.   In the event that the District Judge disagrees with the undersigned's conclusion that Grant's First Offender guilty plea to child molestation constitutes a conviction for purposes of SORNA, the Court will discuss whether the SMART Guidelines, which define "conviction" to include adjudications where the sex offender remains subject to penal consequences based on the conviction, however it may be styled, violates the non-delegation doctrine.

Article I, Section 1 of the Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."   U.S. Const., art. I, § 1. From this language, the Supreme Court has derived the non-delegation doctrine:  that Congress may not constitutionally delegate its legislative authority to another branch of Government.  *Touby v. United States*, 500 U.S. 160, 165 (1991); *see also Mistretta*, 488 U.S. at 371 (noting that "[t]he nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government."); *Marshall*

41

*Field & Co. v. Clark*, 143 U.S. 649, 692 (1892) (stating "[t]hat congress cannot delegate legislative power to the president is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the constitution.").

The Supreme Court has established a tripartite test to determine the constitutionality of delegated legislative authority. In *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928), the Court observed that "if Congress shall lay down by legislative act an *intelligible principle* . . . such legislative action is not a forbidden delegation of legislative power." *Id.* at 409. Specifically, an intelligible principle is "constitutionally sufficient if Congress clearly delineates [1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority." *Mistretta*, 488 U.S. at 372-73 (quoting *American Power & Light Co. v. Sec. & Exch. Comm'n*, 329 U.S. 90, 105 (1946)). To determine the constitutionality of this delegation, however, all three factors of the intelligible-principle test must be met. *Id.*

First, Congress must clearly delineate the general policy. *Mistretta*, 488 U.S. at 373. With SORNA, § 20901 sets forth a policy that "[i]n order to protect the public from sex offenders and offenders against children and in response to the

42

vicious attacks by violent predators against the victims listed below, Congress in this chapter establishes a comprehensive national system for the registration of those offenders." 34 U.S.C. § 20901. By setting forth this broad policy goal of protecting the public and seeking a "comprehensive" national registry, Congress provided guidance for the Attorney General in *how* to apply his discretion. *Ambert*, 561 F.3d at 1213-14. Furthermore, "SORNA's statutory language, its legislative intent, and its place of codification all indicate that Congress' . . . purpose was not to punish former sex offenders for their past crimes but to promote public safety by providing citizens with information about the whereabouts of sex offenders and assisting law enforcement in locating them." *United States v. W.B.H.*, 664 F.3d 848, 854 (11th Cir. 2011).

Second, Congress must clearly delineate the public agency which is to apply the delegated authority. *Mistretta*, 488 U.S. at 373. Here, Congress explicitly authorized "the Attorney General" as the one who, among other authorizations, "shall issue guidelines and regulations to interpret and implement" the requirements for SORNA. 34 U.S.C. § 20912(b).

Third, Congress must clearly delineate the boundaries of the delegated authority. *Mistretta*, 488 U.S. at 373. This principle, that the "authority granted by the

43

legislature must be limited by adequate standards," is vital to preserving the separation of powers required by the Constitution. *State of Ariz. v. State of Cal.*, 373 U.S. 546, 626 (1963). Additionally, it ensures that "the fundamental policy decisions in our society will be made not by an appointed official but by the body immediately responsible to the people." *Id.* Here, Congress set specific and limiting legislative determinations in SORNA which have "the effect of constricting the Attorney General's discretion to a narrow and defined category." *Ambert*, 561 F.3d at 1214. Congress's legislative determinations define the crimes that necessitate registration (34 U.S.C. § 20911); where the offender must register (*id.* § 20913(a)); the time period for registration (*id.* § 20913(b)); the method of registration (*id.* § 20913(b),(c)); the nature of information that registrants must provide (*id.* § 20914(a)(1)-(8)); the elements of the new federal crime (18 U.S.C. § 2250(a)); and the penalty for violation (*id.*). *Ambert* concluded that under SORNA, "Congress has unambiguously delineated its general policy, the public agency which is to apply it, and the boundaries of the delegated authority." *Id.* at 1214.

The Court recognizes that *Ambert* dealt with SORNA's retroactivity and that an argument could be made (and is made in this case) that Congress did not expressly place any boundaries on the Attorney General's delegated authority specifically as to

the term "convicted." Of course, Congress did limit the Attorney General's discretion in regard to convictions by limiting the offenses for which a convicted person was obligated to register. *See*, *e.g.*, 34 U.S.C. § 20911(5)-(8). Even in the face of a lack of expressed limitations as to the word "convicted," the Court concludes that no non-delegation doctrine violation has occurred.

First, Congress is presumed to know the law, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979), and courts assume " 'that Congress is aware of existing law when it passes legislation,' " *Hall v. United States*, 566 U.S. 506, 516 (2012) (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)). "There is a presumption that Congress uses the same term consistently in different statutes." *Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 857 (D.C. Cir. 2006). *But see Securities Indus. Ass'n v. Board of Gov. of Fed. Res. Sys.*, 468 U.S. 137, 174-75 (1984) (O'Connor, J., dissenting) (stating that, "[i]n determining the meaning of a term in a particular statute, the meaning of the term in other statutes is at best only one factor to consider, and it may turn out to be utterly irrelevant in particular cases [;]Congress need not, and frequently does not, use the same term to mean precisely the same thing in two different statutes, even when the statutes are enacted at about the same time"); *In re Barnick*, 353 B.R. 233, 241 (Bankr. C.D. Ill. 2006), *aff'd sub nom. Illinois Marine Towing, Inc.*

AO 72A
(Rev.8/82)

*v. Barnick*, No. 06-CV-1279, 2008 WL 2959776 (C.D. Ill. July 30, 2008) ("Relying on the presumption that Congress uses the same term consistently in different statutes, some courts have relied on other statutes.   In this Court's view, however, that presumption must be applied with caution and is most appropriate only where the two statutes have similar purposes. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005)").

The Court notes that in light of *Dickerson*, Congress amended the 1968 Gun Control Act to re-define the word "convicted" in the statutory scheme to be based upon the law of the state in which the predicate conviction was obtained. *See Logan*, 552 U.S. at 27-28.  Although there is no legislative correlation between SORNA and the Gun Control Act, Congress' amendment to the Gun Control Act that narrowed the scope of the word "convicted" in that statute is some evidence that Congress understood when it subsequently enacted SORNA that the term "convicted" was given a broad meaning under federal law by the Supreme Court and thus included withheld or deferred adjudications under state law.  Therefore, in delegating authority to the Attorney General to  interpret and implement SORNA, it was not necessary to give additional instructions as to the meaning of the term "convicted."

46

In addition, there is no absolute rule against Congress's delegation of authority to define criminal punishments, *Loving v. United States*, 517 U.S. 748, 768 (1996), and the Supreme Court has "upheld delegations whereby the Executive or an independent agency defines by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confin[e] themselves within the field covered by the statute.' " *Id.* (quoting *United States v. Grimaud*, 220 U.S. 506, 518 (1911), and citing *Touby*, 500 U.S. 160). Thus, in the present case, Congress defined the punishment for violating SORNA and after describing what acts constituted a violation of the statute, delegated to the Attorney General to implement and interpret the details in effecting its purpose; that is, Congress made punishable a failure to register in compliance with SORNA, including the Attorney General's regulations.

Third, although not an exact fit, arguments rejected in *United States v. Brown*, 364 F.3d 1266 (11th Cir. 2004), are very similar to the one Grant makes here. In *Brown*, the appellant was convicted of DUI, refusing to submit to a breath test for alcohol, and speeding at the Gulf Islands National Seashore, violations which were made punishable by National Park Service ("NPS") regulations. On appeal, he challenged the Secretary of the Interior's authority under the non-delegation doctrine to promulgate traffic

47

violations within a national seashore.  In affirming Brown's convictions, the Eleventh Circuit observed that the Secretary, through the NPS, was empowered by Congress to "promote and regulate" national parks in a manner that " 'conform[s] to the fundamental purpose of said parks," i.e., "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and such means as will leave them unimpaired for the enjoyment of future generations," and in that regard, the Secretary was required to deem the regulation "necessary and proper for the use and management of the parks." *Id.* at 1272, 1273 (citations omitted).

The *Brown* court concluded that Congress satisfied all three prongs of the "intelligent principle" test.  First, it held that the policy at issue as stated by Congress was not too broad to pass constitutional muster, finding that it was more definite than policies found too vague in other cases.  *Id.* at 1272 (citations omitted).  Second, it noted that Congress unambiguously designated the public agency to apply the policy.  *Id.*  Third, the *Brown* court concluded that Congress laid down appropriate standards to guide the Interior Secretary's determination of the occasions for the exercise of his rule- and regulation-making authority.  *Id.* at 1273-74.  The court also rejected Brown's argument that Congress' delegation of authority to define criminal

48

conduct requires a higher standard than "intelligible principle."  *Id.* at 1274.[15]  In so

concluding, the court reasoned that the Supreme Court has recognized that Congress

can delegate the authority to define criminal punishments so long as Congress makes

the violation of the regulations a criminal offense and establishes the punishment, and

the regulations confine themselves within the field covered by the statute.  *Id.* (quoting

*Loving*, 517 U.S. at 768, and *Grimaud*, 220 U.S. at 518, and citing *Touby*,

500 U.S. 600).  The *Brown* court held that the agency had not legislated what was

criminal but rather it was Congress that had prohibited violations of the NPS

regulations.  *Id.* at 1275-76.

---

[15]     In *Touby,* the Supreme Court suggested "greater congressional specificity" *might* be required for a delegation of legislative authority in the criminal context. *United States v. Fuller*, 627 F.3d 499, 512 (2d Cir. 2010) (citing *Touby*, 500 U.S. at 166).  More specifically, the Court stated when "Congress authorizes another Branch to promulgate regulations that contemplate criminal sanctions . . . [o]ur cases are not entirely clear as to whether more specific guidance is in fact required . . . We need not resolve the issue today." *Touby*, 500 U.S. at 165-66.  Since *Touby*, some circuits have employed a "meaningful constraint" standard when assessing non-delegation challenges to federal criminal statutes.  *See United States v. Amirnazmi*, 645 F.3d 564, 576-77 (3d Cir. 2011); *United States v. Dhafir*, 461 F.3d 211, 216-17 (2d Cir. 2006); *United States v. Arch Trading Co.*, 987 F.2d 1087, 1093-94 (4th Cir. 1993).

As noted in the text, the Eleventh Circuit in *Brown* rejected, without expressly saying so, the heightened "meaningfully constrained" standard, thus joining the Tenth Circuit and the Third Circuit, (*United States v. Cooper*, 750 F.3d 263, 271 (3d Cir. 2014)), in rejecting a more strict non-delegation doctrine in criminal cases.

Turning again to the present case, Congress enacted SORNA, the purpose of which was "to protect the public from sex offenders and offenders against children" by establishing " 'a comprehensive national system' for the registration of sex offenders," 34 U.S.C. § 20190, and required the States to implement sex-offender registries which comply with SORNA requirements by 2009 or lose part of their federal funding. *Id.* §§ 20926, 20927.  SORNA was an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states.  *See* 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch) ("Laws regarding registration for sex offenders have not been consistent from State to State [sic] now all States will lock arms and present a unified front in the battle to protect children.").[16]

Congress then charged the Attorney General with "specific responsibility for administering" SORNA, "including sections that define the scope of its criminal enforcement provision."  *United States v. Piper*, No. 1:12-CR-41-JGM-1, 2013 WL 4052897, at *6 (D. Vt. Aug. 12, 2013).  Then, in § 2250, Congress made it a federal crime and set the punishment for a person who traveled in interstate commerce

---

[16]    There are no committee reports regarding SORNA.  At least one court found that the Congressional Record helped to illuminate the congressional intent behind this statute.  *See Hinen*, 487 F. Supp. 2d at 752 n.5.

AO 72A
(Rev.8/82)

and failed to register as required by SORNA.  Thus, consistent with SORNA's broad purpose and the grant of authority to the Attorney General to implement and interpret it, the SMART Guidelines—consistent as they are with the definition of "convicted" under federal law—defined "convicted" as including suffering penal consequences from the sex offense.  This definition is no more *ultra vires* than the NPS enacting criminal traffic regulations in order to promote and regulate the national parks.  As in *Brown*, the Attorney General has not legislated a crime, but rather Congress has made it a crime to violate SORNA as interpreted and implemented by the Attorney General's regulations.  *Brown*, 364 F.3d at 1276 (and citing cases).

The Court also rejects Grant's reliance on *Ward*.  In *Ward*, the defendant was charged with violating SORNA when he failed to update his temporary out-of-state or out-of-country travel or lodging.  The applicable SMART Guidelines rule required a sex offender to "provide information about any place in which the sex offender is staying when away from his residence for seven or more days . . . ."  *Ward*, 2014 WL 6388502 at *2-3 (quoting  73 Fed. Reg. at 38056 (Part VI, titled "Required Registration Information")).  In *Ward*, the Government argued that this provision was consistent with the catchall provision of 34 U.S.C. § 20914(a)(7), which authorizes the Attorney General to add "other information" to the list of information sex offenders

51

must provide to the registry. *Ward*, 2014 WL 6388502 at *3. The *Ward* court rejected this argument because 34 U.S.C. § 20913(c) only required a registrant to update and keep current a change in certain specifically listed sex-offender information (namely, a change in name, residence, employment, or student status), and the catchall provision only permitted the Attorney General to define the required information for the registry and did not authorize creation of a new SORNA duty to update for sex offenders. *Ward*, 2014 WL 6388502 at *4. More significantly, the *Ward* court concluded that SMART Guidelines merely provided that States could require offenders to update their temporary lodging and thus the SMART Guidelines did not require sex offenders to update this information, and thus an offender's failure to do so could not form the basis for criminal liability. *Id.* at *5. For both of these reasons, *Ward* is distinguishable from the instant case.

Therefore, the Court concludes that Congress satisfied all three factors of the intelligible-principle test. The underlying delegation of legislative authority to the Attorney General is constitutional.

The Court also rejects Grant's argument that *Gundy* necessarily involves the same question posed in this case. The question presented in *Gundy* involves the delegation to issue regulations under 34 U.S.C. § 20913(d), which section deals with

52

retroactivity and regulations concerning when a sex offender could not register in compliance with 34 U.S.C. § 20913(b).  One of the questions in the present case is whether the grant of authority under 34 U.S.C. § 20912(b) offends the non-delegation doctrine.  The Supreme Court's answer in *Gundy* could, but likely will not be, determinative in this case.

### 3.   *The SMART Guidelines' definition of "convicted" has the force and effect of law*

The remaining argument left to be addressed is whether the Attorney General's SMART Guidelines, particularly the definition of "convicted," has the force and effect of law.

As noted, with this constitutional delegation of authority "to issue guidelines and regulations to interpret and implement" SORNA, the Attorney General issued the SMART Guidelines. 34 U.S.C. § 20912(b); Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030 (July 2, 2008).  As stated in the very notice proposing the SMART Guidelines, "these proposed guidelines carry out a statutory directive to the Attorney General."  Proposed Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30210 (May 30, 2007). Nonetheless, Defendant still argues that

53

"[a]lthough Congress directed the Attorney General to issue guidelines for the implementation of SORNA's provisions, it did not direct the Attorney General to issue a *rule* with the force and effect of law defining what the term 'conviction' means." [Doc. 39 at 3].

When courts interpret a statute administered by an executive or administrative agency, they follow the framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984). In general, when a statutory scheme contains either an explicit or implicit gap in its coverage, or is ambiguous, rulemaking by the agency charged with implementing that statutory scheme merits special deference. *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1215 (11th Cir. 2015); *Veneziano v. Grayer*, No. CIVA 1:07-CV-2047-TWT, 2008 WL 542638, at *3 (N.D. Ga. Feb. 22, 2008) (Thrash, J., adopting King, M.J.); *see Chevron*, 467 U.S. at 843-44 ("if Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). *Chevron* established a two-step framework. *King v. Burwell*, 135 S. Ct. 2480, 2488 (2015). "First, if congressional purpose is clear, then interpreting courts and administrative agencies must give effect to the unambiguously expressed intent of Congress." *Cadet v. Bulger*, 377 F.3d 1173,

1185 (11th Cir. 2004) (quotations omitted).  But when a statute is silent or ambiguous, and the agency has interpreted it, then the court must determine whether that interpretation is "reasonable" or "arbitrary, capricious, or manifestly contrary to the statute."  *Id.* (quotations omitted).  If the interpretation is reasonable, it is controlling and the court must defer to it.  *Id.*

As noted in Part III.B.1, the Court concludes that congressional intent was unambiguous and the Court is giving effect to that unambiguously expressed intent as to the broad scope of SORNA and the term "convicted."  To the extent that the District Judge finds that Congress' intent was not unambiguous, then this Court proceeds with the second *Chevron* step.  Filling statutory gaps, left either implicitly or explicitly by Congress, requires the formulation of agency policy and the making of rules. *Morton v. Ruiz*, 415 U.S. 199, 231 (1974).  The Administrative Procedure Act ("APA") distinguishes between interpretive rules and substantive rules.  *See* 5 U.S.C. § 553(b)-(d).  Interpretive rules, on the one hand, " 'do not create rights, but merely clarify an existing statute or regulation.' "  *Lott*, 750 F.3d at 217 (quoting *N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267 F.3d 128, 131 (2d Cir. 2001)).  While an interpretative rule is afforded some deference, *United States v. Mead Corp.*, 533 U.S. 218, 233, 234-35 (2001), it "do[es] not have the force and effect of law" and

55

is merely used "to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)); 5 U.S.C. § 553(d).

On the other hand, a substantive rule "modifies or adds to a legal norm based on the agency's own authority." *Syncor Int'l Corp. v. Shalala,* 127 F.3d 90, 95 (D.C. Cir. 1997); *see also Warshaur v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009) (citing *Syncor Int'l Corp.*). "That authority flows from a congressional delegation to promulgate substantive rules, to engage in supplementary lawmaking." *Syncor Int'l Corp.*, 127 F.3d at 95. Substantive rules have the force and effect of law, as long as an agency adheres to the procedural requirements set out in § 553 of the APA. *See* 5 U.S.C. § 553.[17]

---

[17]     The § 553 requirements are as follows:

Section 553 of the APA provides the procedures that federal government agencies must follow in rulemaking. 5 U.S.C. § 553. Section 553 requires agencies to give notice of proposed rulemaking in the Federal Register and further mandates that the notice include "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b). After providing proper notice, the agency must provide an opportunity for interested parties to comment. 5 U.S.C. § 553(c). "The notice need not specifically identify 'every precise proposal which [the agency] may ultimately adopt as a rule.' " *American Transfer & Storage Co. v. ICC*, 719 F.2d 1283, 1303 (5th Cir. 1983) (citations omitted). "Rather, 'the proper test is whether the

AO 72A
(Rev.8/82)

Here, Congress implicitly left a gap for the Attorney General "to interpret and implement" the requirements for SORNA.   34 U.S.C. § 20912(b); *Bridges*, 741 F.3d at 468 n.5 ("By leaving the operative statutory term undefined and delegating broad rulemaking authority to the Attorney General, Congress has implicitly left a gap in SORNA's statutory regime that the Attorney General may fill.").  Accordingly, the Attorney General published a list of proposed SMART Guidelines, as substantive rules,

_____

notice would fairly appraise interested persons of the subjects and issues the agency was considering.' "  *United Steelworkers of Am. v. Schuylkill Metals*, 828 F.2d 314, 317 (5th Cir. 1987) (citations omitted); *see also Ethyl Corp. v. EPA*, 541 F.2d 1, 48 (D.C. Cir. 1976).

Once the agency has given proper notice and opportunity to comment to interested parties, the agency may modify its original proposed rule; "the rule is not required to 'remain frozen in its original vestigial form.' " *Schuylkill Metals*, 828 F.2d at 317 (citation omitted).  If the agency does alter the proposed rule, it is not required to provide a new comment period "so long as the modified rule is a 'logical outgrowth of the published proceedings.' "  *Id.* (citations omitted); *see also Beirne v. Sec'y of Dep't of Agric.*, 645 F.2d 862, 865 (10th Cir. 1981) ("It is a well settled and sound rule which permits administrative agencies to make changes in the proposed rule after the comment period without a new round of hearings.") (citation omitted).  This principle is limited insomuch as the changes must be in " 'character with the original scheme and (be) foreshadowed in proposals and comments advanced during the rulemaking.' "  *Beirne*, 645 F.2d at 865 (quoting *South Terminal Corp. v. EPA*, 504 F.2d 646, 658 (1st Cir. 1974)).

*Hi-Tech Pharm., Inc. v. Crawford*, 505 F. Supp. 2d 1341, 1348 (N.D. Ga. 2007), *aff'd*, 544 F.3d 1187 (11th Cir. 2008).

57

in the Federal Register on May 30, 2007.  5 U.S.C. § 553(b)-(c); 72 Fed. Reg. 30210.

The Attorney General then took comments on the proposed guidelines until August 1,

2007.  *Id.*  The notice proposing the SMART Guidelines explicitly cited SORNA's

"§ 16912(b)," later codified as 34 U.S.C. § 20912, as the congressionally delegated

legislative authority for the SMART Guidelines.  *Id.*  On July 2, 2008, the Attorney

General published the final version of the SMART Guidelines in the Federal Register.

5 U.S.C. § 553(d); 73 Fed. Reg. at 38030, 38035-36.  Thus, the SMART Guidelines

were promulgated according to the requirements of § 553 of the APA and without any

procedural defect.  5 U.S.C. § 553; *see also United States v. Manning*, 786 F.3d 684,

687 (8th Cir. 2015); *Lott*, 750 F.3d at 219; *United States v. Whitlow*, 714 F.3d 41, 45

(1st Cir. 2013); *United States v. Mattix,* 694 F.3d 1082, 1084 (9th Cir. 2012); *Stevenson*,

676 F.3d at 565.

Finally, the Court concludes that the Attorney General's definition of

"convicted" in the SMART Guidelines was reasonable, since it was consistent with the

broad purpose of SORNA as well as the Supreme Court's interpretation of the term

under federal law.

As a result, the SMART Guidelines, including the Attorney General's definition

of "conviction," have the full force and effect of the law.

*IV.*   *Conclusion*

For all of the above reasons, the undersigned **RECOMMENDS** that Grant's motion to dismiss the indictment, [Doc. 15], be **DENIED**.   The Court **GRANTS** Grant's motion to file his sur-reply out-of-time.   [Doc. 40].   Having ruled on all motions not deferred to the District Judge, this matter is **CERTIFIED READY FOR TRIAL**.

**IT IS SO ORDERED, RECOMMENDED, and CERTIFIED**, this the 4th day of July, 2018.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

59